Frederick J. CROCKER and Maureen O. Crocker, Debtors.

Massachusetts Department of Revenue, Appellant,

v.

Frederick J. Crocker, Maureen O. Crocker, and Steven Weiss, Chapter 7 Trustee, Appellees.

BAP Nos. MW 06–025, 06–029.
Bankruptcy No. 04–43698–HJB.

United States Bankruptcy Appellate Panel of the First Circuit.

Jan. 16, 2007.

Celine E. Jackson, Esq., Counsel of Record, and Jeffrey S. Ogilvie, Esq., on brief for Appellant.

Justin H. Dion, Esq., on brief for Appellees, Frederick J. Crocker and Maureen O. Crocker.

Before DE JESÚS, VAUGHN & DEASY, United States Bankruptcy Appellate Panel Judges.

PER CURIAM.

The Massachusetts Department of Revenue ("MDOR") appeals from the bankruptcy court's June 7, 2006, orders: (1) granting the Debtors' Motion to Reopen Case For Purpose of Invoking the Automatic Stay and Granting Debtors Leave to File

Adversary Proceeding ("Order Reopening Case"), and (2) granting the Debtors' Motion to Invoke the Automatic Stay and Granting Debtors Leave to File Adversary Proceeding ("Stay Order"). The Debtors sought to reopen their Chapter 7 case in order to commence adversary proceedings to determine the dischargeability of the Debtors' income tax obligations to MDOR and the Internal Revenue Service (the "IRS"). MDOR asserts that the dischargeability proceedings should be litigated in a pending action before the state court rather than the bankruptcy court. Based on the specific facts of this case, we affirm.

## BACKGROUND

On June 28, 2004, the Debtors filed a voluntary petition under Chapter 7 of the Bankruptcy Code.[1] On that same date, Stephen Weiss was appointed as Chapter 7 Trustee. In their Schedule F, the Debtors listed tax obligations to the MDOR in the amount of $68,656.41 and to the IRS in the amount of $500,000. The Debtors received a discharge in November, 2004, and the case was closed in May, 2005. This was a no-asset case, and the Debtors did not file an adversary proceeding to determine the dischargeability of their tax obligations during the pendency of their case.

In April, 2006, MDOR commenced a civil action against Frederick Crocker in the Suffolk Superior Court seeking (1) a declaratory judgment that Mr. Crocker's tax liability of $70,285.37 was nondischargeable pursuant to § 523(a)(1)(C) of the Bankruptcy Code as he had "willfully, consciously and intentionally attempted to evade or defeat assessment and payment of the Massachusetts income tax," and (2) a money judgment in the amount of the unpaid taxes. Shortly thereafter, on May

31, 2006, the Debtors filed in the bankruptcy court a motion to reopen their Chapter 7 case ("Motion to Reopen") so that they could commence adversary proceedings against MDOR and the IRS to determine the dischargeability of their tax obligations to each of those taxing entities. At the same time, they filed a motion seeking (1) to "invoke the automatic stay," (2) leave to file adversary proceedings against the IRS and MDOR to determine the dischargeability of their tax obligations pursuant to § 523(a)(1), and (3) leave to file a motion to release MDOR's tax lien ("Stay Motion"). MDOR objected to both motions. After a hearing, the bankruptcy court entered an order granting the Motion to Reopen. It also entered an order regarding the Stay Motion, stating: "Granted insofar as the Commonwealth is stayed from proceeding further in the state court absent a determination of nondischargeability in this case. Debtors are to file the appropriate adversary proceeding(s) within 10 days." On June 15, 2006, the Debtor commenced adversary proceedings against MDOR and the IRS.

MDOR appealed both orders. It also filed motions for leave to appeal the orders, and a motion for a stay of the orders pending these appeals. In separate orders dated June 27, 2006, the Panel consolidated the appeals for briefing and argument, and granted MDOR's motions for leave to appeal. On July 10, 2006, the bankruptcy court entered an order staying further proceedings in the bankruptcy court pending these appeals.

## JURISDICTION

A bankruptcy appellate panel may hear appeals from "final judgments, orders and decrees [pursuant to 28 U.S.C.

---

1. All references to the "Bankruptcy Code" or to specific sections are to the Bankruptcy Reform Act of 1978, as amended prior to April 20, 2005, 11 U.S.C. § 101, *et seq.*

§ 158(a)(1)] or with leave of the court, from interlocutory orders and decrees [pursuant to 28 U.S.C. § 158(a)(3)]." *Fleet Data Processing Corp. v. Branch (In re Bank of New England Corp.)*, 218 B.R. 643, 645 (1st Cir. BAP 1998). A bankruptcy appellate panel is duty-bound to determine its jurisdiction before proceeding to the merits even if not raised by the litigants. *See In re George E. Bumpus, Jr. Constr. Co.*, 226 B.R. 724 (1st Cir. BAP 1998).

■ The orders in this case are interlocutory because they did not resolve the question of the dischargeability of the Debtors' tax obligations, but merely constituted a preliminary step in the nondischargeability process. *See In re Gaines*, 932 F.2d 729, 731–32 (8th Cir.1991); *Paine v. Dickey (In re Paine)*, 250 B.R. 99, 103 n. 4 (9th Cir. BAP 2000); *Wilborn v. Gallagher (In re Wilborn)*, 205 B.R. 202 (9th Cir. BAP 1996). In an order dated June 27, 2006, the Panel, exercising its discretionary authority, granted MDOR leave to appeal from the interlocutory orders.

### STANDARD OF REVIEW

■ A bankruptcy court's decision to reopen a bankruptcy case under § 350(b) is reviewed only for abuse of discretion. *See In re Weinstein*, 217 B.R. 5, 6 (D.Mass.1998), *aff'd*, 164 F.3d 677 (1st Cir. 1999). We also review a bankruptcy court's exercise of its equitable powers under § 105(a) for an abuse of discretion. *See Graves v. Myrvang (In re Myrvang)*, 232 F.3d 1116 (9th Cir.2000).

### DISCUSSION

I. "Whether the bankruptcy court abused its discretion in granting the Debtors' motion to reopen their Chapter 7 case enabling the Debtors to file adversary proceedings against MDOR and the IRS, *for the purpose of determining dischargeabili-* *ty of tax liabilities for both taxing entities.*"

■ Pursuant to the Bankruptcy Code's § 350(b), a debtor or interested party may petition the court in which the bankruptcy case was closed to reopen the case in order "to administer assets, to accord relief to the debtor, or for other cause." 11 U.S.C. § 350(b). It is well settled that the decision to reopen a case is within the sound discretion of the bankruptcy court. *See In re McGuire*, 299 B.R. 53, 55 (Bankr.D.R.I.2003) (citations omitted). "This discretion depends upon the circumstances of the individual case and accords with the equitable nature of all bankruptcy proceedings." *In re Case*, 937 F.2d 1014, 1018 (5th Cir.1991).

■ As the moving party, the Debtors had the burden of demonstrating the grounds for reopening their case. *See In re Otto*, 311 B.R. 43, 47 (Bankr.E.D.Pa. 2004); *In re Carter*, 38 B.R. 636, 638 (Bankr.D.Conn.1984). Courts generally consider a variety of factors when deciding whether to reopen a case:

the length of time that the case was closed . . .; whether a nonbankruptcy forum, such as state court, has the ability to determine the issue sought to be posed by the debtor . . .; whether prior litigation in bankruptcy court implicitly determined that the state court would be the appropriate forum to determine the rights, post bankruptcy, of the parties; whether any parties would be prejudiced were the case reopened or not reopened; the extent of the benefit which the debtor seeks to achieve by reopening; and whether it is clear at the outset that the debtor would not be entitled to any relief after the case were reopened.

*Otto*, 311 B.R. at 47 (citations omitted). In a number of cases, courts have exercised their discretion not to reopen a bankruptcy

case where there was a pending case in a non-bankruptcy forum with jurisdiction to hear the dispute. *See id.* (citing *In re Tinsley*, 98 B.R. 791 (Bankr.S.D.Ohio 1989); *In re E.A. Adams, Inc.*, 29 B.R. 227 (Bankr.D.R.I.1983); *In re Hepburn*, 27 B.R. 135 (Bankr.E.D.N.Y.1983)).

■ In this case, the bankruptcy court acknowledged that a complaint regarding the dischargeability of Mr. Crocker's tax obligations to MDOR was already pending in the Suffolk Superior Court, but determined that the bankruptcy court would be the better forum for determining the issue. Specifically, the bankruptcy court concluded that this case does not present a factual question, but rather a legal question of how to interpret the term "willfully attempted . . . to evade and defeat such tax" under § 523(a)(1)(C). According to the bankruptcy court, a purely legal question of statutory interpretation of the Bankruptcy Code is more appropriately determined by the bankruptcy court.

MDOR advances two reasons why the bankruptcy court abused its discretion in granting the Motion to Reopen. First,

MDOR argues the bankruptcy court gave no weight to the fact that the state court has concurrent jurisdiction and abused its discretion since "the Crockers failed to demonstrate that the State court would be unable to decide the dischargeability issue." It cites *In re Jackson*, 2006 Bankr.LEXIS 1201 (Bankr.D. Mass. June 6, 2006), a decision entered one day prior to the entry of the orders in this case.[2] Next, MDOR argues the decision to reopen promotes piecemeal litigation rather than judicial economy, as the bankruptcy court's jurisdiction is limited to determining the matter of dischargeability of the tax debt. Should MDOR prevail on that issue, it would have to return to the state court to obtain and enforce a money judgment, whereas the state court has jurisdiction to enter judgment in both matters currently before that forum.

■ MDOR correctly states that concurrent jurisdiction over the dischargeability of MDOR's tax claim exists in this case between the state superior court and the federal bankruptcy court.[3] This fact is

---

**2.** In *Jackson*, the debtor filed a Chapter 7 bankruptcy petition and scheduled MDOR as a holder of a $20,000 undisputed income tax claim. The case was a no-asset case. A discharge order was entered and the case was closed. Thereafter, MDOR filed a complaint in state court asserting, pursuant to § 523(a)(1)(C), that the debtor had willfully attempted to evade and defeat the tax, and sought a money judgment for the unpaid taxes. The debtor moved to reopen his case, arguing that the bankruptcy court had original and exclusive jurisdiction to determine dischargeability and, therefore, the state court venue was improper. The bankruptcy court denied the motion, reasoning that because MDOR's claim of non-dischargeability was based on § 523(c)(1)(C), MDOR was not required to bring the action in the bankruptcy court, and the state court had concurrent jurisdiction over the dischargeability issue. Accordingly, the bankruptcy court concluded that "because the MDOR has an action pending in the state court, a court of competent

jurisdiction, there is no reason to reopen the Chapter 7." *In re Jackson*, 2006 Bankr.LEXIS 1201 at *7. MDOR argues that the bankruptcy court should have applied the same reasoning in this case and denied the Motion to Reopen because of the pending state court action.

**3.** Section 523 provides exceptions to discharge from bankruptcy. Bankruptcy courts have exclusive jurisdiction for debts listed in §§ 523(a)(2), (4), (6), and (15). With respect to determining whether other debts, including tax debts, are dischargeable, bankruptcy courts have concurrent jurisdiction with other courts. *See Swanson v. Commissioner*, 121 T.C. 111, 126–27, 2003 WL 22020782 (2003); *Whitehouse v. LaRoche*, 277 F.3d 568, 576 (1st Cir.2002); *In re Iannacone*, 21 B.R. 153, 155 (Bankr.D.Mass.1982) ("Dischargeability questions under § 523(a)(3) are the type over which the Bankruptcy Court has concurrent, but not exclusive, jurisdiction."); *see also* Fed. R. Bankr.P. 4007, Advisory Committee's

undisputed, and, therefore, an analysis of concurrent versus exclusive jurisdiction is unnecessary. Because of this concurrent jurisdiction, the existence of a pending state court action should be weighed and considered by a bankruptcy court determining whether to reopen a bankruptcy case. It has been held that if the only "cause" claimed for reopening a case is the opportunity the reopening gives the debtor to choose which of two courts of competent jurisdiction will determine the dischargeability issue, that benefit is insufficient to "accord relief to the debtor" or to constitute "other cause" for reopening pursuant to § 350(b). *See In re Iannacone*, 21 B.R. 153, 155 (Bankr.D.Mass.1982); *In re McNeil*, 13 B.R. 743, 747–48 (Bankr. S.D.N.Y.1981). In this case, however, the Debtors did not seek to reopen their bankruptcy case for the sole purpose of commencing an adversary proceeding against MDOR so that the bankruptcy court, rather than the state court, could determine dischargeability. The Debtors also sought to commence an adversary proceeding against the IRS regarding the dischargeability of tax obligations owed to that taxing entity. There was no pending action concerning the dischargeability of that obligation. Consequently, this case is factually distinguishable from *Jackson* and the other cases cited by MDOR.

With respect to the argument that the bankruptcy court's decision to reopen the case promotes piecemeal litigation, MDOR points to some cases where the Massachusetts bankruptcy court has concluded that

bankruptcy courts do not have authority to enter money judgments in dischargeability proceedings.[4] Acknowledging that the Massachusetts bankruptcy judges differ on this issue, MDOR argues that "[t]he bankruptcy court acknowledged this problem, and stated from the bench that he would only determine the dischargeability issue, leaving MDOR to pursue any further remedies elsewhere." MDOR mischaracterizes the bankruptcy court's ruling on this issue. The bankruptcy judge did not rule that it would not address MDOR's claim for a money judgment; rather, he ruled that it was premature to address that issue until a ruling on dischargeability is issued.

Our review shows the bankruptcy court did not abuse its discretion when it decided to reopen the case. There is no evidence showing the pending state court action concerning the dischargeability of the state tax obligation could be decided more expeditiously by the state court rather than the bankruptcy court. MDOR's argument that the bankruptcy court's decision ignored concerns of judicial economy is offset by the fact that the case was reopened so the court could resolve the dischargeability of Mr. Crocker's tax liability to both the state and the federal governments, a resolution that could not be accomplished through the pending litigation in the state court. Furthermore, the crucial evidence of record showed the bankruptcy court's main reason for reopening the case was to interpret a term used in the specific section of the Bankruptcy Code invoked by MDOR in the pending suit it filed in the

Note (1983) ("Jurisdiction over this issue on these debts [debts listed under §§ 523(a)(1), (3), (5), (7), (8), (9)] is held concurrently by the Bankruptcy Court and any appropriate nonbankruptcy forum."). Such concurrent jurisdiction allows dischargeability issues relating to certain debts to be decided by the nonbankruptcy court if the issues have not been addressed by the bankruptcy court in a

prior Chapter 7 proceeding. *Swanson*, 121 T.C. at 127.

**4.** *See Cambio v. Mattera (In re Cambio)*, 353 B.R. 30 (1st Cir. BAP 2004), where the Panel held the bankruptcy court lacked jurisdiction to enter a money judgment once it determined that the debt to be collected was not dischargeable.

state court. Exercising its discretion to reopen the case for these reasons is not an abusive action in the eyes of the law.

**II.** "Whether the bankruptcy court abused its discretion in imposing a stay pursuant to § 105(a) against MDOR's pursuit of the Debtors in state court during the pendency of their reopened Chapter 7 bankruptcy case."

In conjunction with its order reopening the case, the bankruptcy court granted the Debtors' Stay Motion. MDOR argues that the bankruptcy court erred in "reimposing" the automatic stay under § 362 after the Debtors had received their discharge order and the bankruptcy case had been closed. The Debtors argue that the bankruptcy court did not "reimpose" the automatic stay under § 362, but rather used its equitable powers under § 105(a) powers to "stay" the state court proceeding.

### A. The Automatic Stay under Bankruptcy Code's § 362

The filing of a bankruptcy petition creates an automatic stay of all court proceedings and other acts to collect a prepetition liability from the debtor. 11 U.S.C. § 362(a)(1) & (6). This is true even as to debts that will ultimately be excepted from discharge, since one of the fundamental purposes of the automatic stay is to give the debtor "a breathing spell from his creditors" and "to be relieved of the financial pressures that drove him into bankruptcy." H.R.Rep. No. 95–595 at 340 (1977). The stay, however, is not permanent. Unless sooner lifted by the court at the request of the affected party, it expires, with respect to acts against the debtor and property of the debtor, on the earlier of the date the debtor is granted or denied a discharge, the case is dismissed, or the case is closed. 11 U.S.C. § 362(c)(2).

MDOR argues that the reopening of a bankruptcy case does not automatically revive the automatic stay of § 362, and that the bankruptcy court lacked authority to "reimpose" or "reinvoke" the stay. The Tax Court and several bankruptcy courts have similarly concluded that the reopening of a case does not reinstate the automatic stay of § 362.[5] Accordingly, there is support for MDOR's assertion that "reimposition" of the automatic stay would have been improper.

The Debtors argue, however, that the bankruptcy court did not reimpose the automatic stay under § 362, but rather used its § 105(a) powers to stay the state court proceeding. We agree, as the record shows the bankruptcy court recharacterized its Stay Order in a footnote denying MDOR's motion for stay appeal, stating: "[T]his Court does not believe that the issue is whether the automatic stay under 11 U.S.C. § 362(a) may be re-imposed, but whether, to facilitate its decision to exercise its jurisdiction, a bankruptcy court may stay the state court proceeding under 11 U.S.C. § 105(a)." Thus, the issue is whether the bankruptcy court was authorized to stay the state court proceeding through its broad § 105(a) powers.

### B. Stay Powers under Bankruptcy Code's § 105(a)

Section 105(a) of the Bankruptcy Code provides bankruptcy courts with broad discretion to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). It is well settled that the bankruptcy court's author-

---

5. *Allison v. Commissioner,* 97 T.C. 544, 1991 WL 238314 (1991); *In re Trevino,* 78 B.R. 29 (Bankr.M.D.Pa.1987); *Burke v. United States* *(In re Burke),* 198 B.R. 412, 416 (Bankr. S.D.Ga.1996); *In re Gruetzmacher,* 145 B.R. 270, 273 (Bankr.W.D.Wis.1991).

ity under § 105 is broader than the automatic stay provisions of § 362. *See In re Baldwin–United Corp. Litig.*, 765 F.2d 343, 348 (2d Cir.1985). However, the bankruptcy court's equitable powers are not unlimited. *The Underwriters at Lloyd's, London v. Chancellor Corp. (In re Adley)*, 333 B.R. 587 (Bankr.D.Mass.2005). The statute specifically states that any action taken under § 105 must be designed to carry out the provisions of the Bankruptcy Code. Thus, § 105 allows bankruptcy courts to fashion relief *if* it is consistent with the provisions of the Bankruptcy Code. A bankruptcy court cannot use its § 105 powers to circumvent a bankruptcy rule or create new bankruptcy law.

 Under most circumstances, a federal court has no power to enjoin state court proceedings. The Anti–Injunction Act provides:

> A court of the United States may not grant an injunction to stay proceedings in a state court *except as expressly authorized by Act of Congress,* or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.

28 U.S.C. § 2283 (emphasis added). Section 105 of the Bankruptcy Code, however, is an "expressly authorized" exception to the statute. *See* S.Rep. No. 95–989, 95th Cong., 2d Sess., *reprinted in* 1978 U.S.C.C.A.N. 5787, 5815; 2 *Collier on Bankruptcy* ¶ 105.02 (15th ed. Supp.1986). It authorizes the bankruptcy court to stay proceedings in state court. *See* H.R.Rep. No. 595, 95th Cong., 1st Sess. 316 (1977). Accordingly, although there is no automatic reinstatement of the automatic stay after the reopening of a closed bankruptcy case, § 105(a) provides the bankruptcy court with broad equitable powers to preserve its own jurisdiction. *See LTV Steel Co. v. Bd. of Educ. (In re Chateaugay Corp. Reomar, Inc.)*, 93 B.R. 26, 29 (S.D.N.Y.1988); *see also In re L & S Indus., Inc.*, 989 F.2d 929, 932 (7th Cir.1993);

2 *Collier on Bankruptcy* ¶ 105.02 at 105–3 (15th ed. Supp.1986). At least one district court has upheld a bankruptcy court's issuance of a stay or injunction of an action in another forum "on the grounds that [the bankruptcy court] rather than another court" is the appropriate forum to decide the issue. *See Chateaugay*, 93 B.R. at 29.

Based on the foregoing, we conclude the bankruptcy court had the authority under § 105(a) to stay the state court action and did so to preserve its jurisdiction over the dischargeability issues to be filed by Debtors in the adversary proceeding within the reopened bankruptcy case. Thus, the bankruptcy court did not abuse its discretion when issuing the stay pursuant to § 105 under the circumstances of this case.

### CONCLUSION

For the foregoing reasons, the bankruptcy court's orders granting the reopening of this case so that Debtors may prosecute a proceeding to determine their tax obligations to the state and federal governments and the stay of MDOR's pending suit filed before Suffolk Superior Court are **AFFIRMED.**